Good afternoon, your honors. May it please the court. My name is Jenna Beyer with the San Francisco Public Defender's Office, appearing pro bono on behalf of Petitioner Maximo De Leon-Ajucum. I would like to reserve two minutes of my time for rebuttal. This court should reverse the board's denial of Mr. De Leon's motion to reopen based on ineffective assistance of counsel and order the agency to grant him a new hearing with the benefit of competent counsel. In his Convention Against Torture claim, Mr. De Leon paid a significant sum to his prior counsel, and what he received was a simulation of justice. When the board reviewed his motion to reopen, it compounded his injury by failing to adhere to the settled standards of this court. The board erred in its review of his ineffective assistance of counsel claim in three respects. First, the board erred when it found prior counsel's performance was competent, when she failed to uncover critical facts underlying his Convention Against Torture claim, when she failed to present readily available country conditions evidence regarding the conditions on the ground in Guatemala, she failed to prepare his testimony for the hearing, and ultimately, when she failed to tether the facts of the case with the evidence to the legal standard in his Convention Against Torture claim. What would you say is the most significant piece of new evidence that you all have discovered that prior counsel should have presented at the original hearing? Your Honor, I believe the most significant new evidence is the country conditions evidence. I would point your honor to the UNHCR report, the International Crisis Group report. The UNHCR background paper also provides a lot of detail regarding the modus operandi of violence, those who defy their power and control. And that's exactly the situation that Mr. de Leon was in. This evidence, as this court knows, country conditions evidence can be decisive in Convention Against Torture claims. So we think that these reports, which were from the time period of his hearing, from 2011, 2012, which were readily available, that is the most glaring and egregious omission by prior counsel in this case. Do you need the expert report part of that? Do you need the expert report to tie those country conditions to his facts? Certainly, the expert report is particularized, and the expert says that it is highly probable that he will be tortured. But the country conditions viewed under the legal standard of whether he has laid out a plausible claim for relief certainly meet that burden. And in addition, the failure of prior counsel to even talk about the possibility of hiring an expert for his claim, compounded with her other errors and inaction, constitutes clear deficient performance in this case. She did not speak with Mr. de Leon to prepare a detailed declaration with him. So in addition to the country conditions evidence, there were critical facts missing from his sparse English-language unsigned declaration, including an entire source of torture. So the facts that she presented in his hearing only discuss his fear of return based on Mada 18, and do not at all discuss the context in which he started receiving extortion demands and threats from Ms. 13 when he was 12. So we're talking about escalation over a period of years, and not one potential source of torture, but two. There is no way in which the immigration judge could reasonably assess or aggregate the risks to him in evaluating his claim. And she failed to at all connect his personal experience with what was happening in Guatemala. Notably, your honors, the two pages of country conditions evidence from the 2011 Department of State report do not discuss gangs at all. There is no mention anywhere in those two pages of gangs, which is the entities that he fears. So let me ask you a couple of questions, if I may. So our review of a denial of a motion to reopen is for abuse of discretion. But if the BIA made legal errors, then obviously that would be an abuse of discretion. And I understand from your opening remarks and in the briefs that you contend that the board did not apply the correct legal standards. Could you be a little bit more specific in where the from us? Absolutely, your honor. The board erred in disregarding this court's precedent with respect to how to evaluate evidence supporting a motion to reopen. Under settled case law, the board was required to take as true the factual allegations supporting the motion. And in its analysis of the competence of prior counsel, the board clearly either disregards entirely Mr. De Leon's claims or at a minimum gives his prior counsel's unsworn letter equal weight to what happened in that performance. So that would be the first misapplication of this court's legal standards. The second, which is very clear on its face, is that the board here sought to hold Mr. De Leon to the ultimate standard for CAT, whether he is clearly, there's a clear probability that he will be tortured in Guatemala. As this court well knows, that is not the standard. The standard is whether he met the deficient performance may have affected the outcome of the proceedings, and whether he has a plausible claim for relief, which he clearly does here, as the country and someone who is a young male returnee going to the Western Highlands, the Quetzaltenango province are at especially high risk. So we believe that we've more than met the plausible standard with the expanded evidence, along with the motion to reopen, and that the board erred in holding him to a more stringent requirement. So you're just asking us to grant the petition and remand for application of the correct legal standards? Are you asking for us to direct the board to grant the motion or what? Thank you, Your Honor. We're asking the court to direct the board to grant reopening outright. I think there is support for ordering the board to reopen outright. In Morales Apolinar versus Mukasey, this is exactly what the court did. They said, this person has a plausible claim, they should have the benefit of a new hearing with competent counsel. And similarly here, this court should order remand with instructions for the board to grant reopening, so that he may have an opportunity to present his claim with the first instance. And I will reserve the remainder of my time for rebuttal. Thank you. We'll hear from the government. Your Honors, may it please the court, I'm Susan Green. Your Honors, this is a case, unlike many ineffective assistance of counsel claims, this is a case where Mr. DeLeon is asking the court to reopen in order to allow him to have a full hearing on and has produced evidence in front of an immigration judge and lost. And so in this case, it's going to be very important to compare what happened at his first hearing with what he says should happen if he got another hearing. So first of all, we need to go back and talk about what happened at the first hearing. Remember that in the first he got to raise a claim based on his experiences with the Mara 18, when he said he was abused, accosted eight times. And he said the worst thing that happened to him was that he was head butted and he got a cut in his head. So that was his basic claim. And he, I think he's alleging now that the his lawyer didn't prepare him. He had never really talked to her. And so the reason he only gave some of this testimony and not the whole story is because he had ineffective assistance of counsel. Okay. I think if you go back and if you look at the record, and I think in this case, it's important to look at the record of the proceedings below. He testified at length. He added details that had not been in his original application. So he had both a hearing in front of an immigration judge and also his reasonable fear interview where he testified at some length about the incidents. He added new things. He was asked, particularly he was asked, so can you please tell me what gang it was that attempted to recruit you? He said the members of the Mara 18 gang. That is a 460 of the record. Same thing in the reasonable fear proceedings. He was asked about these things. He had the chance to talk about them. The reasonable fear relevant part is 553 to 54. He had the chance to talk about that. And additionally, he was asked about that who filled out the application. He said he did. That was, he said, 462, 463, 464. He got to talk about all these things. There is really nothing in the record that substantiates the idea that he didn't get to tell his story and tell what he thought was salient about his story. And he specifically said that he came because he was worried about what happened in 2012 at the beginning of 2012 when he was 18 years old. So he had the chance to tell the things that were important to him. Can I ask you a question? Can I just ask you a quick before you finish that point? And that is, I thought at the, you said he got to augment what he put in his statement. But I thought when he did that, the ALJ found him not credible. Well, the immigration judge did find him not credible because he had committed fraud when he, he had document fraud when he came in. He used false, false visa. Then he gave a wrong name when he was caught the second time. And then also he, he was questioned about why he hadn't made an asylum claim the first time. And he said that it was, he said that he didn't need to make the asylum claim the first time because he had another way to leave the country. He could go and live with his father who was in Mexico. So there were, yeah, the IJ did find him not credible, but it wasn't because at all because of the details that he added in about what happened with the more 18. In fact, the IJ relied on those additional details like the head, but the head wound. So yeah, no, there's no issue about the IJ saying that it was anything was odd about him adding further details about his encounters. So no, I don't think that that is a problem in the record. Okay. The other thing that he says in his briefing and in his motion to the board that he says his attorney did wrong was that he said that she didn't file letters from people in Guatemala that his sister had given him. Well, first of all, I think that's really important to recognize that the board did not deny his claim because they found him non-credible that the IJ had done that, but the board didn't reach that credibility. They, they assumed that he was credible and, and, and engaged with his facts the way he told them. So these affidavit or the people in Guatemala that he says he was injured because the lawyer didn't file those and those couldn't have helped because his claim wasn't denied for lack of corroboration or lack of credibility. And also he now has filed additional affidavits from people in Guatemala and you can look at those and you can see quite clearly that they wouldn't have helped either. They're at 187, 189. They are just general. I'm sorry. How do you respond to your opponent's argument that the board did not apply the correct legal standard because it essentially credited his former counsel's version of events? Your Honor, the board did not purport to decide, it didn't make a credibility determination. I just think the board was attentive to Ninth Circuit standards. They did say what the, the attorney said, but of course, I mean, that's not reversible error to acknowledge what the attorney said in the Lozada filings. I mean. Put it a little bit more bluntly. Let me put it a little bit more bluntly. If you, if you credited his version of the events on the deficient performance prong, right? If you credited his version of events, I think you'd have to conclude that his lawyer performed efficiently, wouldn't you? Well, the thing about it is, is you, the board also can look at the underlying proceedings. That's in the Lemsicko case that, that DeLeon has cited and in other cases as well. But it's, it's clear that, and especially important in a case like this, where there was a full litigation of the claim, the, the court absolutely, and the board absolutely can go back and should go back and look at what happened in the underlying proceedings. And that's where his problem is, is that his, he litigated this same claim. And the things that she says are new, important facts, don't make a difference in the basis on which the board decided the first claim. The board decided the first claim because he failed, first of all, he failed to prove that he had experienced torture in the past. But also, he failed to prove that there was any official acquiescence. Remember that this was a convention against torture. Isn't that what the country reports, the country reports relate to that, don't they? Well, there are no country reports that show that he is in a particular risk category for being tortured with official acquiescence. There is country conditions evidence that people, you know, young men are going to get recruited, and they're at risk. But remember, that's at risk from private violence, and that will not establish a CIT claim. A CIT claim requires that state action. That's very important. Because CIT is broad, broad, broad, it has none of the bars that you have in asylum. I mean, you could be the worst criminal in the world. But if you show that you're likely to be tortured with official acquiescence, you can stay in the U.S. into, I mean, under the CIT. How do you respond to be very, I'm sorry, finish your point. And we have to be very attentive to the fact that that CIT does require that state action. And that's exactly what he did not prove in this case. And that's why he lost the first time. And that's why he would lose again. So and as the board said, he he didn't, none of his evidence supplied that lack. And one thing I really want to hang on, hang on, hang on, let me ask you a question. Okay, I thought I gave you enough time to finish your thought there. They respond on that point by pointing to the new statement in to the statement in his new declaration, in which he I can't remember the particulars, but you'll know them better in which he said, essentially, that he did not go and report the threats he was getting to the police because the gang members told him basically that, you know, the police are with us, and they will basically let us know if you go and report. And so that seemed to me to bolster his claim of government acquiescence. No, you know, I mean, that he's saying what the gang told him that they, you know, other cases have said that if the gang is trying to tell you not to go to the police, that suggests that they don't have the police in their pocket. And I cited a case to that effect in my brief. I'm saying, let me let me make sure I got the fact straight. I thought he said that the gang members told him, you better not go to tell the police, because if you do, they will tell us that you have essentially, you know, stating explicitly that we are in cahoots with the police. And we will know if you've tried to disobey our orders, and we'll obviously retaliate against you. I mean, he he did say that it is he I think he said that both times. But the thing about it is, is that is not evidence that any official actually knew. That's enough. That's that criminal is telling you not to go to the police. And as I said, I cited a case in my brief, I don't remember the name of the case now, where they actually said, you know, actually, if the gang is telling you not to go to the police, that's some evidence that the police, you know, that they, the police might help you or that the police might would enforce the law. And the main thing, can I ask you, do you have a response to the other argument about the error that the agency applied clear probability instead of may have made a difference? Your Honor, I think that if you look at the board decision, they were trying very much to be very much here to the line of Ninth Circuit law. And they talked about it being a plausible claim. But Your Honor, as a matter of common sense, where the whole question in this case is trying to compare what happened the first time he litigated it with the second time he litigated, you've got to talk about whether he became more likely to win under the standard. And the standard, of course, is clear probability. So I mean, it would make the board would not even be able to talk about this case if they couldn't acknowledge what the standard is, because they've got to be able to compare apples to apples to decide this case. Okay. Thank you. We've got some rebuttal time for the petition. Okay. I disagree with my opponent's characterization of the BIA decision and his direct appeal. It was not denied based on acquiescence. I'm looking at AR 346. The general human rights abuses in Guatemala cited by the applicant on appeal are insufficient to show a he is personally at risk of torture. In other words, those two pages that only vaguely make a passing reference to human rights abuse are not enough. I also disagree with my opponent that we have not submitted evidence of acquiescence that the Guatemalan government would turn a willful blind eye to the type of torture that Mr. De Leon fears. At page AR 322 from the CNN report, top level politicians openly say that corruption pervades all levels of government. Gangs have taken over the prison system, drug and migrant trafficking across borders, quote, with the help of corrupt police and border guards. Indeed, the expert who evaluated his claim and found that his account of events was consistent with his understanding of conditions in that the police might even pass information about him to those who are trying to intimidate, harm or torture him or even join in the criminal activity. Again, we clearly think that this shows that with competent counsel, this may have made a difference in his proceedings. We ask this court to remand with instructions for the board to reopen so that he may have that full and fair hearing in the first instance. Thank you. Thank you, counsel. We appreciate your arguments this afternoon. And with that, the matter is submitted.
judges: PAEZ, WATFORD, FRIEDLAND